UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JOHN SALCEDO, individually and on behalf of others similarly situated,

    Plaintiff,

v.

THE LAW OFFICES OF JASON A. DIAMOND, P.A., d/b/a "The Traffic Ticket Team", a Florida professional association,

    Defendant.

CASE NO.:

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF IN ACCORDANCE WITH 47 U.S.C. § 227 *et seq.*, THE TELPHONE CONSUMER PROTECTION ACT,

1.    This is an action arising from Defendant's violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* At various times, and on numerous instances within the time frame relevant to this complaint, Defendant sent, or orchestrated the sending of unsolicited text messages to the cellular telephones of Plaintiff and others, in violation of the TCPA.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction under 28 U.S.C. § 1331. This action arises under a federal statute. *See Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 565 U.S., 181 L. Ed. 2d 881 (2012). Venue in this District is proper because a

1

substantial amount of the Defendant's acts or omissions giving rise to the claims asserted herein occurred in this District.

## PARTIES

3. Plaintiff, JOHN SALCEDO ("Plaintiff"), is a natural person who, at all times relevant herein, was a resident of Broward County, Florida.

4. Defendant, THE LAW OFFICES OF JASON A. DIAMOND, P.A ("Diamond, P.A."), is a Florida professional association whose principal office is located at 4421 Hollywood Boulevard, Hollywood, FL 33021, and whose registered agent for service of process is Rhonda M. Diamond, 4421 Hollywood Boulevard, Hollywood, FL 33021.

5. Defendant, Diamond, P.A., is the owner of and does business under the fictitious name, "The Traffic Ticket Team."

6. According to Diamond, P.A.'s website, "the lawyers from Mr. Diamond's Law Firm have handled over **1,000,000 traffic tickets**."

## TEXT MESSAGING

7. In recent years, sellers of goods and services who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

8. One of the newest types of bulk marketing is to advertise through Short Message Services. Short Message Service or SMS, is synonymous with text message, Text, TXT, etc. An SMS (text message) is a short message, usually limited to around 120 characters. A "short code" is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

9. Short codes are special cellular telephone exchanges, typically only five or six digit extensions, which can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services such as television program voting or more benevolent uses, such as making charitable donations.

10. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation\ deduction to their text plan, regardless of whether or not the message is authorized.

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of

privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003). ("2003 TCPA Order").

12. In the *1995 TCPA Order on Recon*, the Commission stated that "[a]lthough the term 'express permission or invitation' is not defined in statutory language or history, there is no indication that Congress intended that calls be excepted from telephone solicitation restrictions unless the residential subscriber has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services." *Rules and Regulations Implementing the Telephone Consumer Act of 1991,* CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12396, para. 11 (1995) (*1995 TCPA Order on Recon).*

13. In its 2003 Order, the FCC rejected proposals to create a good faith exception for inadvertent autodialed or prerecorded calls to wireless numbers and **proposals to create implied consent**. 2003 TCPA Order, at 14117 (¶ 172). (emphasis added).

14. Text messages are "calls" within the context of the TCPA. <u>Satterfield v. Simon & Schuster, Inc.</u>, 569 F.3d 946 (9th Cir. 2009).

15. The voluntary surrender of one's telephone number to a sales clerk does not equate to "express consent." <u>TSA Stores v. Department of Agriculture</u>, 957 So.2d 25 (Fla. 5th DCA 2007).

16. Many of the text messages received by the Plaintiff originated from the short code 313131. The aforesaid short code one of several registered to an entity identified as EZ Texting or its parent company, CallFire. Defendant uses or has used the services of EZ Texting to facilitate the distribution of its mass text messages.

17. To the extent that any third party, acting on behalf of the Defendant, actually placed or assisted in the placement of the calls at issue, Defendant is vicariously liable for the acts of that third party entity. *See generally*, <u>Smith v. State Farm Mut. Auto. Ins. Co</u>., 2013 WL 5346430 (N.D. Ill. Sept. 23, 2013); *see also, In Re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C.R. 12391, 12407-08 (1995).

18. According to its website, EZ Texting's mobile text marketing software allows users to launch Bulk SMS Campaigns in seconds, in the United States and Canada.

19. Mass text messaging sent from short codes can only be achieved via an automatic telephone dialing system. *See generally,* <u>Legg v. Voice Media Group, Inc.</u>, No. 13-62044-CIV-COHN/SELTZER (S.D. Fla. Jan. 3, 2014).

20. EZ Texting uses automatic telephone dialing systems to facilitate the delivery of text messages, *en masse*.

21. In 2003, the FCC issued an order specifically stating the TCPA's prohibition on autodialed calls "encompasses both voice calls and text calls to wireless numbers including, for example short message service (SMS) calls...." 2003 TCPA Order, at 14114 (¶ 165).

22. In a Report and Order approved on February 15, 2012, the FCC adopted additional protections for consumers concerning unwanted autodialed calls. Beginning October 16, 2013, prior express written consent is required for all autodialed and/or pre-recorded calls/texts sent to cell phones.

23. Even if a sender had prior express consent to send automatically dialed text messages prior to October 16, 2013, that prior express consent does not satisfy the new rule unless consent is unambiguous and is in writing. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 (Feb. 15, 2012).

## **FACTUAL ALLEGATIONS**

24. Several years ago, Plaintiff retained The Law Offices of Jason A. Diamond, P.A. to represent him in relation to a traffic ticket.

25. After resolution of the above referenced matter, Plaintiff no longer required the services of Defendant; accordingly, Plaintiff had no further contact with the aforesaid law firm.

26. On or about November 21, 2014, Plaintiff received the following unsolicited text message:





27. Again, on or about November 25, 2014, Plaintiff received yet another unsolicited text message from Defendant.

28. The text messages were sent from Defendant, using EZ Texting's "personalization" feature, where, according to EZ Texting, "First and last name fields can be automatically merged into your mass text messages for a personal touch."[1]

29. Upon information and belief, Defendant regularly procures lists of individuals who receive traffic infractions. That list is automatically cross-referenced against the Defendant's list of former clients. When a match is located, a text message materially similar to the one shown above is automatically generated and sent to the former client.

30. At no time did Plaintiff unambiguously agree, in writing, to receive such calls to his cellular telephone.

31. Plaintiff is the registered subscriber, with exclusive dominion and control, of the cellular telephone number to which the violative text messages alleged herein were placed.

## CLASS ALLEGATIONS

32. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

---

[1] Source: https://www.eztexting.com/features/advanced-messaging. (Last accessed: December 12, 2014).

33. This action is also brought on behalf of a class of similarly situated individuals consisting of (i) all persons in the State of Florida (ii) with dominion and control over a cellular telephone (iii) who, on or after October 16, 2013 through the current date, were sent text messages (iii) from Defendant or any person acting on behalf of Defendant (iv) to their cellular telephone (v) without first having given Defendant their written, unambiguous, prior express consent to receive such text messages.

34. Plaintiff alleges on information and belief, based upon Plaintiff's and Plaintiff's counsel's reasonable investigation, that, because Defendant has handled over 1 million traffic tickets, the class is so numerous that joinder of all members of the class is impractical.

35. There are questions of law or fact common to the class, which common issues predominate over any issues involving only individual class members. The factual issues common to each class member is that each received autodialed text messages from Defendant to their cellular telephone, without first having provided written consent to receive such messages. The principal legal issue is whether Defendant's conduct violates the TPCA's prohibition against sending text messages without written, prior express consent.

36. Plaintiff's claims are typical of those of the class members. All are based on the same facts and legal theories. Plaintiff is, in fact, a member of the proposed class.

37. Plaintiff will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling actions involving unlawful practices under the TCPA and class actions. Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this action.

38. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

(1) The questions of law or fact common to the members of the members of the class predominate over any questions affecting an individual member.

(2) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

39. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole. Plaintiffs request certification of a class under Rule 23(b)(3), Federal Rules of Civil Procedure, for monetary damages.

# COUNT I
## *Violations of the TCPA as to Named Plaintiff and the Class*

40. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

41. Defendant made commercial text calls to Plaintiff's and the class members' cellular telephones on or after October 16, 2013 using an automatic telephone dialing system.

42. The calls were made without the Plaintiff's and the class members' prior written express consent, and were not made for any emergency purpose.

43. All of the calls were placed or after October 16, 2013.

44. The calls were placed willfully and knowingly within the meaning of those terms under the TCPA.

45. The aforesaid calls were therefore made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(a)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for:

    (a) An Order certifying this action to proceed as a Class Action and appointing Scott D. Owens and Seth M. Lehrman as Class Counsel.

    (a)    Statutory damages of $500 per call for each call placed in violation of the TCPA;

    (b)    Additional damages of up to $1500 per call for each call held to be placed willfully or knowingly;

    (c)    An injunction requiring Defendant to cease all communications in violation of the TCPA;

    (d)    Costs and reasonable attorney's fees to the extent provided for by law;

    (e)    Such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: December 30, 2014.

Respectfully submitted,

By: */s/ Scott D. Owens*
Scott D. Owens (Fla. Bar No. 597651)
Email: scott@scottdowens.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Suite 235
Hollywood, Florida 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666

Steven R. Jaffe (Fla. Bar No. 390770)
Email: steve@pathtojustice.com
Seth M. Lehrman (Fla. Bar No. 132896)
Email: seth@pathtojustice.com
Mark S. Fistos (Fla. Bar No. 909191)
Email: mark@pathtojustice.com
FARMER, JAFFE, WEISSING, EDWARDS FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822
