**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

**CASE NO.: 0:14-cv-62961-Dimitrouleas-Snow**

JOHN SALCEDO, individually and on behalf
of others similarly situated,

    Plaintiff,

  v.

THE LAW OFFICES OF JASON A.
DIAMOND, P.A. d/b/a "The Traffic Ticket
Team," a Florida professional association, and
CALLFIRE, INC. d/b/a EZ TEXTING.COM,
a foreign corporation,

    Defendants.

**DEFENDANT CALLFIRE INC.'S MOTION TO DISMISS THE FIRST AMENDED**
**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant CallFire, Inc. ("CallFire"), through counsel and pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), respectfully moves to dismiss Plaintiff's First Amended Class Action Complaint for Damages and Injunctive Relief ("FAC") for lack of personal jurisdiction and failure to state a claim.

## STATEMENT OF THE ISSUES TO BE DECIDED

1.     Whether the FAC should be dismissed as to CallFire for lack of personal jurisdiction because CallFire is a common carrier located in California that provides communications services from California, does not direct its activities toward Florida, and has no control over whether its customer allegedly chose to market *its* services to Florida residents, just like the previous corporate owner of www.eztexting.com, Club Texting, Inc., was dismissed from an indistinguishable case because the District Court for the Middle District of Florida found that Club Texting was not subject to personal jurisdiction in Florida.[1]

2.     Whether the FAC states a claim against CallFire, a common carrier, for violating the Telephone Consumer Protection Act ("TCPA") based on the messages CallFire's customer is alleged to have sent to Plaintiff when Plaintiff never alleges that CallFire had actual notice that Plaintiff allegedly did not provide consent to receive the messages at issue, and CallFire did not initiate the messages, or control the content, timing or recipients of the two messages allegedly received by Plaintiff.

## CALLFIRE'S COMMON CARRIER SERVICES

CallFire is a common carrier that provides its customers various web-based telecommunications services that allow its customers to develop and send their own text messages to recipients of the customers' choosing.  Declaration of Jagannathan Thinakaran in Support of Defendant CallFire Inc.'s Motion to Dismiss ("Thinakaran Decl.") at ¶ 3 attached hereto as **Exhibit 1**.  At all times relevant to the FAC, CallFire has been a common carrier subject to regulation under Title II of the Communications Act of 1934.[2]  CallFire's common

---

[1]     *See Rutherford v. Zoom Tan, Inc.*, CIV NO. 2:12-509-FtM-29DNF, 2013 WL 4001343 (M.D. Fla. Aug. 5, 2013).

[2]     *See* http://apps.fcc.gov/cgb/form499/499detail.cfm?FilerNum=829923 (last accessed Feb. 5, 2015).  In its Form 499 Filer Database, the FCC recognizes CallFire's status as a competitive local exchange carrier, or CLEC, which is a particular type of common carrier regulated under Title II of the Communications Act.  *See, e.g.*, 47 USC § 251(b).  The Court can and should consider CallFire's regulatory status in ruling on its Motion to Dismiss.  *See, e.g., Coppes v.*

carrier service enables a customer to create messages and transmit them to telephone numbers selected *solely* by the customer.  *Id.* at ¶¶ 3-4.  CallFire does not control the content, destination or timing of its customers' text messages.  *Id.* at ¶¶ 4, 9.  Rather, CallFire acts as a passive conduit between its customers and the downstream telecommunications carriers that deliver the messages to the ultimate recipients selected by CallFire's customers, just like any other common carrier. *Id.* at ¶ 5.

Further, because CallFire has no relationship with the ultimate recipients of the messages its customers choose to send, all of CallFire's customers must agree to CallFire's Terms of Service[3] in order to use its services.  *Id.* at ¶ 7.  Relevant to this inquiry, CallFire's Terms of Service[4] contain the following requirements related to its customers' use of its common carrier services:

> You represent and warrant that the owners of the phone numbers you initiate messages to through the CallFire services have consented or otherwise opted-in to the receipt of such messages and broadcasts as required by any applicable law or regulation…. You agree to familiarize yourself with and abide by all applicable local, state, national and international laws and regulations and are solely responsible for all acts or omissions that occur under your account, including without limitation the content of the messages and broadcasts that you create and initiate through the CallFire Services. Without limiting the foregoing, you agree to familiarize yourself with the legalities of any messages, calls, broadcasts, and campaigns transmitted through the CallFire Services….
>
> You accept that the Services are provided for professional use only, and you agree that your use of the CallFire Sites or Services shall not include:

---

*Wachovia Mortg. Corp.*, 2:10-CV-01689-GEB, 2010 WL 4483817 (E.D. Cal. Nov. 1, 2010) (taking judicial notice of Department of Treasury and Federal Deposit Insurance Corporation records and documents demonstrating Wachovia Mortgage's status as a federal savings bank).

[3]     *Available at* http://www.callfire.com/legal/terms (last accessed Feb. 5, 2015) (attached as **Exhibit A** to the Thinakaran Decl.).

[4]     CallFire's Terms of Service on its website are properly before the Court because Plaintiff put the content of CallFire's website at issue by discussing CallFire's services, CallFire's website and its provision of service to its customers. D.E. 6 at ¶¶ 8, 9, 24, 33.  The Terms of Service are therefore "'integral' to the Complaint, and [the Court can] consider [their] terms in deciding" CallFire's Motion to Dismiss "without converting the proceeding to one for summary judgment." *International Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995). In addition, there is no prohibition against including additional material referenced in a complaint to provide context for the Court to properly consider a motion to dismiss for lack of personal jurisdiction.

Sending unsolicited marketing messages or broadcasts (i.e. spam)… .[5]

At bottom, CallFire's is a common carrier that receives instructions and transmits messages initiated by its customers, based on its customers' instructions, without alteration, to downstream telecommunications carriers.[6]

## LEGAL ARGUMENT

Plaintiff's FAC should be dismissed as against CallFire first and foremost because the Court lacks personal jurisdiction over CallFire. Plaintiff's FAC fails to address the Court's jurisdiction over CallFire, and asserts only that venue is proper in this District because "acts or omissions giving rise to the claims . . . occurred in this District" and that Defendant, The Law Offices of Jason A. Diamond, P.A. ("Diamond"), used the services on CallFire's publicly available website. This does not make a *prima facie* showing that the Court can exercise either general or specific jurisdiction over CallFire consistent with required due process. Defendant Diamond's independent decision to allegedly market *its* business in Florida cannot be imputed to CallFire, which lacks sufficient "minimum contacts" with Florida. Indeed, based on indistinguishable facts and allegations, or the lack thereof, in *Rutherford*, the District Court for the Middle District of Florida dismissed the previous owner of the EZ Texting text messaging service, Club Texting, Inc. ("Club Texting"), because the independent decision of Club Texting's customer to market *its* service to Florida residents did not confer jurisdiction over Club Texting in Florida.[7] *See Rutherford*, 2013 WL 4001343 at *3-4. There is no reason to depart from that holding here.

---

[5]     *See* Thinakaran Decl. at Ex. A § 3, Usage Policy.

[6]     The test for common carriage is universally recognized as having the following two criteria: "(1) whether the carrier 'holds himself out to serve indifferently all potential users'; and (2) whether the carrier allows 'customers to transmit intelligence of their own design and choosing." *U.S. Telecom Association*, 295 F.3d at 1329–32 (2002) (emphasis added, citation omitted); *see also Qwest Commc'ns Corp. v. City of Berkley*, 146 F. Supp. 2d 1081, 1095 (N.D. Cal. 2001) ("The Supreme Court defined a common carrier as one that 'makes a public offering to provide [communications facilities] whereby all members of the public who choose to employ such facilities may communicate or transmit intelligence of their own design and choosing.'") (quoting *FCC v. Midwest Video Corp.*, 440 U.S. 689 (1979)).

[7]     CallFire acquired all of the assets of Club Texting, including www.eztexting.com, in 2012. CallFire therefore operated and controlled the text messaging service offered through this website at all times relevant to Plaintiff's FAC. Thinakaran Decl. at ¶ 2.

Plaintiff's FAC should also be dismissed as to CallFire because Plaintiff fails to state a claim against it under the TCPA.  The only relevant conduct actionable under the TCPA is to *initiate* an unlawful message.  *See* 47 C.F.R. § 64.1200(a)(1)(iii).  Plaintiff's FAC can plausibly be read as alleging only that Diamond, and not CallFire, initiated its own text messages through CallFire's common carrier service.  *See* D.E. 6 at ¶ 9 (alleging Diamond "orchestrated the transmission" of the text messages); *see also id.* at ¶ 22 (describing CallFire's service as one which permits "***users to launch***" their own text messages) (emphasis added)).  Because message *transmission* is not separately actionable, Plaintiff fails to state a claim against CallFire.

Further, the FCC and the courts exempt common carriers from liability for their customers' transmissions, unless they have a "high degree of involvement" or "actual notice" of the illegal use of their services. The crux of Plaintiff's allegations as to CallFire is that CallFire facilitates the transmission of its customers' messages like any other common carrier. Plaintiff makes no allegation that CallFire was highly involved in the two text messages allegedly sent by Diamond to Plaintiff or that CallFire had actual notice that Plaintiff allegedly did not consent to receive text messages from Diamond.

# I.     THE COURT LACKS PERSONAL JURISDICTION OVER CALLFIRE

Neither the Florida long-arm statute nor the Due Process Clause permits the exercise of jurisdiction over CallFire.  Personal jurisdiction is "an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (citation and internal quotation marks omitted).  Indeed, as the court in *Rutherford* held, the out-of-state operation of www.eztexting.com does not confer jurisdiction over CallFire simply because one of its users independently directs their own messages to a Florida resident.  *Rutherford*, 2013 WL 4001343 at *3-4.  Accordingly, the FAC should be dismissed on this ground alone.[8]

## A.     Standard For Lack Of Personal Jurisdiction.

To survive a motion to dismiss pursuant to Rule 12(b)(2), a plaintiff must plead facts establishing a *prima facie* case for personal jurisdiction over the defendant.  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  Where a defendant's principal place of business is

---

[8]     To the extent the Court will evaluate the sufficiency of Plaintiff's claim prior to deciding personal jurisdiction, *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010), CallFire demonstrates that the FAC should be dismissed for failure to state a claim below.

located outside the state of Florida, a Florida court may exercise jurisdiction over the defendant only if the plaintiff establishes that Florida's long-arm statute provides a basis for jurisdiction. Fla. Stat. § 48.193.  Florida's long-arm statute is to be strictly construed.  *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 891 (11th Cir.1983). Florida's long-arm statute is applicable if the plaintiff establishes either "general" or "specific" jurisdiction over the defendant.  *Id.* at 893; § 48.193(1), Florida Statutes (specific jurisdiction provisions); § 48.193(2), Florida Statutes (general jurisdiction provision).  Even if plaintiff establishes that Florida's long-arm statute should be invoked, the plaintiff must also establish that the defendant has sufficient "minimum contacts" with Florida such that due process is not violated.  *Meier v. Sun Int'l Hotels Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002).

 Here, Plaintiff's FAC acknowledges that CallFire is an out-of-state party and maintains a principal place of business outside of Florida.  D.E. 6 at ¶ 7. Thus, Plaintiff's FAC must allege facts demonstrating that (1) CallFire is subject to jurisdiction under Florida's long-arm statute and that (2) CallFire has sufficient "minimum contacts" with Florida to avoid violating due process.  *Meier*, 288 F.3d at 1274.  Plaintiff's FAC fails to establish either element.

### B.      Plaintiff Fails To Show Personal Jurisdiction Under Florida's Long-Arm Statute.

Under Florida's long-arm statute, personal jurisdiction may be based on either "general" or "specific" jurisdiction.  *See* Section 48.193, Florida Statutes.  Plaintiff demonstrates neither. "The Supreme Court of Florida has emphasized that, unlike in many jurisdictions, the Florida long arm statute has not been construed as going the limits of due process, and the jurisdictional analysis under the statute and the jurisdictional analysis under the federal constitution are distinct."  *Geodetic Servs., Inc. v. Metronor AS*, No. 6:98-cv-1416ORL19A, 2000 WL 1027222, at *4 (M.D. Fla. Feb. 9, 2000) (citing *Milligan Elec. Co., Inc. v. Hudson Constr. Co.*, 886 F. Supp. 845, 848 (N.D. Fla. 1995)).  Plaintiff has the burden to prove facts justifying use of the statute.  *See Structural Panels, Inc. v. Texas Aluminum Indus., Inc.*, 814 F. Supp. 1058, 1064 (M.D. Fla. 1993). The FAC is silent as to which provisions of Florida's long-arm statute allegedly apply. An analysis of the potential applicable provisions shows that *none* are applicable.

### 1.      Plaintiff cannot show general jurisdiction over CallFire.

Under Section 48.193(2), to establish general jurisdiction under Florida's long-arm statute, Plaintiff must show that CallFire has "continuous and systematic contacts sufficient to

confer general jurisdiction, [which] present[s] a 'much higher threshold' than those contacts necessary to support specific jurisdiction." *Verizon Trademark Services, LLC v. Producers, Inc.*, No. 8:10-CV-665-T-33EAJ, 2011 WL 3629002, at *7 (M.D. Fla. Aug. 18, 2011) (quoting *Seabra v. Int'l Specialty Imp's, Inc.*, 869 So. 2d 732, 734 (Fla. 4th Dist. Ct. App. 2004); *see also Croft v. Lewis*, Case No. 8:09–cv–1370–T–27AEP, 2010 WL 1707426, at , at *9-10 (M.D. Fla. Apr. 1, 2010) (no general jurisdiction over a foreign corporation even considering defendants' website in combination with 6% of gross worldwide sales to Florida residents); *see also Trustees of Columbia Univ. In City of New York v. Ocean World, S.A.*, 12 So. 3d 788, 792 (Fla. Dist. Ct. App. 2009) ("much higher threshold" applies to general jurisdiction).[9]   Under this section, a court may exercise personal jurisdiction whether or not the claim arises from the defendant's activities within the state if the defendant is engaged in substantial and not isolated activity within the state. *See Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1337 (M.D. Fla. 2002).

Plaintiff has not plead sufficient facts to establish that CallFire has "continuous and systematic contacts" with Florida.  In fact, the FAC barely refers to CallFire's contacts with Florida.  It merely alleges that "[v]enue in this District is proper because a substantial amount of the Defendants' acts or omissions giving rise to the claims asserted herein occurred in this District" and alleges that Defendant Diamond used the services on CallFire's publicly available website.  D.E. 6 at  ¶¶ 2, 9.  These allegations are plainly insufficient.

Moreover, no facts could establish that CallFire has continuous and systematic general business contacts with Florida since CallFire has no purposeful contacts with Florida.

- CallFire is not incorporated in Florida. Thinakaran Decl. at ¶ 8.

- CallFire does not intentionally do business in Florida, has not been qualified to do business in Florida, and is not required to be qualified to do business in Florida. *Id*. at ¶¶ 10, 11. CallFire has no subsidiaries that are incorporated or qualified to do business in Florida. *Id*. ¶ 12.

- CallFire does not have a registered agent for service of process in Florida. *Id*. at ¶ 13.

- None of CallFire's officers or directors resides or is domiciled in Florida. *Id*. at ¶ 14. CallFire has no employees residing or domiciled in Florida, nor has it contracted

---

[9]     Some courts interpreting Florida law have stated that the general jurisdiction provision extends to the limits of due process.  *See Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). CallFire discusses the due process concerns with exercising personal jurisdiction over CallFire in Florida below.

with persons residing in Florida to act on its behalf with respect to marketing, distributing, or servicing any of CallFire's products or services. *Id*.

- CallFire has no offices, retail stores, authorized dealers, agents, or facilities in Florida, and it has no telephone listings or mailing address in Florida. *Id*. at ¶ 15. CallFire has no bank accounts or other tangible personal or real property in Florida, and CallFire does not lease any property within the state. *Id*. at ¶¶ 16, 17.

- CallFire does not direct any of its advertising specifically toward Florida residents; nor has it advertised in any publications that are directed primarily toward Florida residents. *Id*. at ¶ 18. No agent or employee of CallFire has ever visited Florida for the purpose of soliciting business or to advertise CallFire's services. *Id*. at ¶ 19.

- CallFire has not availed itself of any courts in Florida or other governmental benefits relating to Florida. *Id*. at ¶ 20.

- CallFire's website is not directed at Florida; instead customers come to CallFire's website to sign up. *Id*. at ¶ 21. Customers that sign up to use CallFire's software and services do so via CallFire's website, but CallFire does not track or easily know where a particular customer is located. *Id*. CallFire does not ask where the customer is located. *Id*.

At most, Plaintiff's FAC alleges that Defendant Diamond entered into an agreement with CallFire and used CallFire's website. *See* D.E. 6 at ¶¶ 9, 33, 34. CallFire's Terms of Service, to which all of its customers must agree, is governed by California law. Thinakaran Decl. at ¶ 7. Moreover, a single contract and the existence of a website are far from the "extensive and pervasive" contacts to satisfy general jurisdiction. *See Trustees of Columbia Univ.*, 12 So. 3d at 793. Plaintiff would have to show "that a significant portion of [CallFire's] business operations or revenue derived from established commercial relationships in the state [or that] ... [CallFire] continuously solicits and procures substantial sales in Florida." *Id*. The website is far from sufficient. "The mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible." *Id*. at 795 (quoting *McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005)). In fact, Plaintiff's allegations identify the national scope of CallFire's business, which is not directed to Florida. D.E. 6 at ¶ 22. ("According to its website, www.EZTexting.com's mobile text marketing software allows users to launch Bulk SMS Campaigns in seconds, in the United States and Canada."). Additionally, the fact that Defendant Diamond would have agreed to CallFire's Terms of Service to use its common carrier services is insufficient in itself. *See Alan Richard Textiles, Ltd. v. Vertilux, Inc.*, 627 So. 2d 529, 530 (Fla. 3d Dist. Ct. App. 1993) ("[A] contract alone was not sufficient to

establish minimum contacts with the forum state so as to allow the out-of-state party to be sued in the forum state.") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

Plaintiff has failed to plead the "continuous and systematic contacts sufficient to confer general jurisdiction" in Florida, *Verizon Trademark*, 2011 WL 3629002, at *7, and, as a factual matter, such contacts do not exist.[10]  As a result, there is no general jurisdiction over CallFire in Florida.

### 2. Plaintiff cannot show specific jurisdiction over CallFire.

In considering Section 48.193(1),'s specific jurisdiction provisions, Plaintiff fails to allege facts to support such jurisdiction over CallFire in Florida.  Specific jurisdiction may be exercised only if there is "some direct affiliation, nexus, or substantial connection between the cause of action and the activities within the state."  *Harris Corp. v. Rembrandt Tech.*, No. 6:07-CV-796-Orl-31DAB, 2007 WL 2900246, at *3 (M.D. Fla. Sept. 28, 2007).  Under Section 48.193(1), there are eight categories of activity that could subject a party to specific jurisdiction.  Five such categories are inapplicable to the type of conduct alleged in the FAC and do not

---

[10]  There is one difference between CallFire's lack of Florida contacts and those facts considered by the District Court for the Middle District of Florida in *Rutherford*. In this instance, in 2013, CallFire explored expanding its carrier footprint to Florida and, as a result, took the initial step of registering to do business in Florida.  Thinakaran Decl. at ¶ 11.  CallFire, however, ultimately decided against expanding into Florida and did not become licensed to provide intrastate telecommunications services in Florida.  CallFire is no longer registered to do business in Florida.  *See* Florida Secretary of State Website for CallFire's "Inactive Status" at http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=CALLFIRE%20F130000032790&aggregateId=forp-f13000003279-1fb55953-bd59-48bb-8f9b-34c2fafc6e91&searchTerm=CallFire&listNameOrder=CALLFIRE%20F130000032790 (last visited Feb. 9, 2015).  CallFire's now lapsed registration to conduct business in Florida does not provide a ground to exercise jurisdiction over CallFire.  *See In re Farmland Indus., Inc.*, No. 3:05-CV-587-J-32MCR, 2007 WL 1018367 at *12 (M.D. Fla. Mar. 20, 2007) ("The Court agrees with those cases holding that registering to do business and appointing a registered agent in the state of Florida, without more, does not subject a foreign corporation to the general personal jurisdiction of the state for any and all unrelated actions. Such a single contact does not meet the requirement for general personal jurisdiction that the defendant's contact with the forum state be 'substantial and not isolated,' 'continuous and systematic,' either under Florida's long-arm statute, or the tenets of due process."); *see also Sofrar, S.A. v. Graham Eng'g Corp.*, 35 F. Supp. 2d 919 (S.D. Fla. 1999) ("personal jurisdiction over a corporate defendant cannot be found on the basis of a defendant's registration to do business in the state and designation of a corporate agent alone.").

warrant specific analysis.[11]   The remaining categories include the following activities: (1) carrying on business in Florida; (2) committing torts in Florida arising from or directly relating to, contacts with Florida; and (3) causing injury in Florida.  If the cause of action does not arise out of the foregoing activities enumerated in the statute, specific personal jurisdiction does not exist.  *See, e.g., Wallack v. Worldwide Machinery Sales, Inc.*, 278 F. Supp. 2d 1358, 1367 (M.D. Fla. 2003). Here, Plaintiff fails to plead facts showing that *any* of the foregoing categories apply.

### a. Plaintiff does not allege that CallFire carried on business in Florida.

To establish that a defendant is "carrying on business" in Florida under Section 48.193(1)(a), "the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Systems*, 218 F.3d 1247, 1249 (11th Cir. 2000). As shown above regarding general personal jurisdiction, it cannot be said that CallFire carries on business in Florida given the lack of business contacts. When a non-resident has no offices or substantial business activity in Florida, this provision is not satisfied.  *Schwab v. Hites*, No. 2:11-CV-638-FTM-29, 2012 WL 4052277, at *9 (M.D. Fla. Sept. 14, 2012) (allegations of a single Florida client and revenue from Florida were not sufficient to find specific jurisdiction under Section 48.193(1)(a) over non-resident defendant who otherwise had no offices or business license in Florida).

### b. Plaintiff does not allege that CallFire committed a tort in Florida.

Plaintiff cannot show specific jurisdiction under Section 48.193(1)(b).  In considering whether a defendant committed a tort in the state, "[t]he court's sole inquiry and determination" is "whether the tort as alleged occurred in Florida." *Walter Lorenz Surgical, Inc. v. Teague*, 721 So. 2d 358, 359 (Fla. 1st Dist. Ct. App. 1998).  First of all, Plaintiff does not allege that CallFire committed a tort in Florida.  This alone is fatal to any reliance by Plaintiff on this section of the Florida long-arm statute.  Furthermore, CallFire cannot be subject to personal jurisdiction based on the commission of a tort because a TCPA claim, the only claim in Plaintiff's complaint, is not a tort, but a Congressionally-created statutory cause of action.  *See* 47 U.S.C. § 227(b)(3).

Moreover, even assuming *arguendo* that an alleged TCPA statutory violation could constitute a tort, any alleged tort committed by CallFire would have occurred outside of Florida. Here, the supposed alleged "tort" would be the violation of the TCPA.  The TCPA prohibits

---

[11]     These categories relate to (1) mortgages or liens on real property in Florida; (2) providing insurance; (3) child support and divorce; (4) breach of contract; and (5) paternity actions.

**making** an unsolicited text call under certain circumstances.  47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-- (A) to **make** any call....") (emphasis added).  Thus for any alleged tort to have occurred in Florida, CallFire would have to have **made** calls in Florida. But, that is not the case.  CallFire is not located in Florida, nor are the common carrier services that allowed *Diamond* to initiate two allegedly unsolicited messages provided in Florida. Thinakaran Decl. at ¶ 8. At most, Plaintiff alleges that he and possibly other residents of Florida **received** unsolicited text calls in Florida, which is not addressed by the plain language of the TCPA.  D.E. 6 at ¶¶ 28-31, 35.  Any alleged violation of the TCPA could not possibly have occurred in Florida.

Finally, CallFire does not make any calls to Plaintiff or anyone else. As explained below, CallFire simply transmitted the text messages initiated by Defendant Diamond to carriers further downstream.  *See* Thinakaran Decl. at ¶¶ 3-5, 9. CallFire never created nor sent a text message on behalf of Defendant Diamond; solely Diamond created and sent the text messages.  *Id.* CallFire should not be held responsible for a customer's alleged misuse of its services to send unsolicited text messages.[12]  Since no alleged tortious act was committed in Florida by CallFire, this provision of the long-arm statute is inapplicable.

### c. Plaintiff does not plead that CallFire caused injury in Florida.

Finally, Plaintiff cannot show that Section 48.193(1)(f) applies.  Plaintiff alleges that it suffered damages arising from CallFire's conduct, however, Florida's long-arm statute does not apply merely because a Florida resident suffers damages.  Plaintiff's alleged damages are all pecuniary in nature, and Florida courts have held that that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction in Florida pursuant to Section 48.193(1)(f).  *Rogers v. Nacchio*, 241 Fed. Appx. 602, 606 (11th Cir. 2007) ("With regard to § 48.193(1)(f), the court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction in Florida.") (citing *Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 511 So. 2d 992, 994 (Fla. 1987)).  Plaintiff has not alleged that he suffered physical property damage or personal injury in Florida and thus cannot rely upon Fla.

---

[12]    Indeed, any other result would mean that every telephone company is subject to personal jurisdiction across the entire country simply because a telephone customer can make a call to a person located anywhere in the country.

Stat. § 48.193(1)(f) to assert jurisdiction over CallFire. *Aetna Life*, 511 So. 2d at 994 ("We hold that the provisions of section 48.193(1)(f) contemplate personal injury or physical property damage."). Consequently, Plaintiff has failed to demonstrate that any of these provisions of Florida's long-arm statute apply. As the *Rutherford* court already established, CallFire is not subject to specific jurisdiction in Florida.

### C. Exercise Of General Jurisdiction Over CallFire Violates Due Process.

Even if the Court were to find that long-arm jurisdiction could be asserted over CallFire, Plaintiff's FAC must still be dismissed because Plaintiff has failed to allege any facts to allow this Court to exercise jurisdiction over CallFire without violating CallFire's due process rights. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258-59 (11th Cir.1996). Subjecting CallFire to jurisdiction in Florida comports with due process only as long as "minimum contacts" exist between CallFire and Florida and exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id*. at 258 (quotation omitted). There are three factors to consider in determining whether CallFire has sufficient minimum contacts:

> First, the contacts must be related to the Plaintiff's cause of action . . . Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum (4)27 [*sic*] Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

*Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1220 (11th Cir. 1999) (quoting *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (internal quotations and punctuation omitted)). As detailed above, Plaintiff's FAC contains no allegations that CallFire has maintained substantial contacts with Florida beyond its alleged provision of service from California, via a generally accessible website, to Defendant Diamond. Nor do the facts support minimum contacts. CallFire has not conducted business activities in Florida of any sort. Thinakaran Decl. at ¶¶ 8, 21. Nor has CallFire ever anticipated being subject to a Florida court's jurisdiction merely by accepting customers through its website; CallFire does not track its customers' locations. *Id*. ¶ 21; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.").

Nor are traditional notions of fair play and substantial justice met when considering the appropriate factors such as "the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the Plaintiff's interest in obtaining convenient and

effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies." *Madara v. Hall*, 916 F.2d 1510, 1517 (11th Cir. 1990).  CallFire, which Plaintiff acknowledges is based thousands of miles away, faces a not unsubstantial burden in defending a Florida case.  Moreover, Plaintiff's claim does not relate to any substantive social policy in the State of Florida to which Florida courts would be particularly well suited to address; instead, Plaintiff asserts a cause of action under federal law.  In short, neither aspect of due process is satisfied to justify jurisdiction over CallFire.

Finally, to the extent the Court determines that Plaintiff sufficiently alleged that a tort occurred in Florida and that CallFire should be subject to that claim (which CallFire claims should not be the case), due process is still not met.  In order to determine whether sufficient minimum contacts exist in tort cases, the Eleventh Circuit applies the "effects" test.  *Jackson-Bear Group v. Amirjazil*, No.2:10-cv-332-FtM-29SPC, 2011 WL 1232985, at *6 (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009)). This test requires Plaintiff to show "that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum (3) causing an injury within the forum that the defendant should have reasonably anticipated."  *Id*. (quoting *Oldfield*, 558 F.3d at 1221).

CallFire cannot have committed an intentional tort aimed at Florida simply by signing up a customer who later used CallFire's software to allegedly send unsolicited text messages to a Florida resident unbeknownst to CallFire.  "[M]ere untargeted action or a fortuitous result will not" satisfy the effects test. *Id*. (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 n.6 (11th Cir. 2008)).  Nowhere does the FAC allege, nor could it alleged, that CallFire targeted Florida customers knowing or even understanding that they would, in turn, target Florida residents.  CallFire similarly could not have "reasonably anticipated" any injury in Florida.  It has no knowledge of the telephone numbers used by any customer, including Defendant Diamond, nor does CallFire have any interaction with the individuals contacted by CallFire's customers.  Thinakaran Decl. at ¶¶ 4-5, 9 ; *see also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997) (holding that there was no personal jurisdiction over foreign company where there was no showing that the defendant even knew of the existence of the plaintiff, let alone targeted them individually).

-12-

In sum, any exercise of personal jurisdiction over CallFire would violate due process. The Plaintiff's FAC should be dismissed.

## II.     THE FAC FAILS TO STATE A CLAIM AGAINST CALLFIRE

Even if the Court finds that there is personal jurisdiction over CallFire, which it should not, the Court should dismiss the FAC as to CallFire for failure to state a claim.

### A.     Standard For Failure To State A Claim

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). Moreover, when considering a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555); *see also Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."). "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." *Sinaltrainal v. The Coca-Cola Company*, 578 F.3d 1252, 1260 (11th Cir. 2009). As detailed below, Plaintiff has not shown that he has a plausible right to relief against CallFire.

### B.     The Allegations In The FAC Are Insufficient To Establish That CallFire Violated The TCPA

#### 1.     Liability Is Limited To Those Who Initiate The Call; A Common Carrier That Transmits Its Customers' Messages Does Not Initiate Them

Plaintiff's apparent theory of the case is that any entity that has some involvement in the transmission of a message, regardless of how passive that involvement is, can be held liable under the TCPA. But this novel interpretation of the TCPA conflicts with the express language of the TCPA itself, Congress' intent in enacting the TCPA, and subsequent FCC decisions. Plaintiff's allegations of CallFire's alleged role in the *transmission* – and not the initiation – of its customers' messages, even if true, fail to state a claim against CallFire.

A crucial element of a TCPA claim is that the defendant *made a call*. 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person within the United States . . . (A) to **make** any

call. . . .") (emphasis added).  The FCC has clarified in its regulations implementing the TCPA that making a call relates to the person or entity initiating the message.  *See* 47 C.F.R. §64.1200(a)(1)(iii) (making it unlawful to "**initiate** any telephone call" via an automatic telephone dialing system to a cellular telephone service without the recipient's prior express consent) (emphasis added).[13]

This exact language matters.  Under the Hobbs Act, 28 U.S.C. § 2342(1), district courts are bound by the FCC's rulings.[14]  Thus, the FCC's decision clarifying that "to make" a call means that the person or entity "initiating" the call is entitled to Hobbs Act deference, and district courts are bound to apply this decision.  *Olney*, 2014 WL 1747674, at *4.  By analogy, the TCPA makes it actionable for a person to place an unlawful letter in the mailbox.  It doesn't hold the U.S. Postal Service liable for delivering that letter.

CallFire has not initiated any calls to Plaintiff (or anyone else), nor does Plaintiff's FAC allege otherwise.  Rather, as detailed above, CallFire is a common carrier that simply receives

---

[13]        Although neither the TCPA nor the FCC's regulations define the term "initiate," in *Joint Petition filed by Dish Network, LLC, The United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules*, 28 FCC Rcd. 6574 (2013), the FCC clarified that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *Id.* at 6583 ¶ 26.  The FCC further held that "a seller can also be a telemarketer – e.g., when the seller initiates a call on its own behalf.  And one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it – by giving the third party specific and comprehensive instructions as to the timing and the manner of the call, for example." *Id.* at ¶ 27. Further, in March 2014 the FCC issued a declaratory ruling reaffirming that "the TCPA **holds *a caller* liable for TCPA violations** even when" the call would not have occurred but for an intermediary's independent acts. *GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling, Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, CG Docket No. 02-278 at ¶ 12 (rel. Mar. 27, 2014), available at http://transition.fcc.gov/Daily_Releases/Daily_ Business/2014/db0327/FCC-14-33A1.pdf (last accessed Feb. 9, 2015) (emphasis added).  In addition, the TCPA's legislative history makes clear that "[t]he regulations concerning the use of [automatic telephone dialing systems] apply to the persons ***initiating*** the telephone call or sending the message **and do not apply to the common carrier** or other entity **that *transmits* the call or message and that is not the originator or controller of the content of the call or message**." *See* S. Rep. No. 102-178, 1991 U.S.C.C.A.N. 1968, 1997 (1991) (emphasis added).

[14]        *See*, *e.g.*, *Olney v. Job.com, Inc.*, CIV No. 12-cv-1742, 2014 WL 1747674, at *4 (E.D. Cal. May 1, 2014) ("The FCC's interpretations of the TCPA are controlling unless invalidated by a court of appeals.").

instructions after its customers initiate their messages from their own computer equipment and transmits its customers' messages, without alteration, based on those instructions to downstream telecommunications carriers for ultimate delivery to the intended recipient. Indeed, Plaintiff alleges that CallFire's role in its customers' messages is that CallFire provides a service to allow its "*users to launch*," that is, initiate, their own messages. D.E. 6 at ¶¶ 22; s*ee also* D.E. 6 at ¶ 9 ("Defendant Diamond uses www.EZTexting.com to facilitate the distribution of its" messages). Plaintiff further alleges that "Defendant Diamond entered into an agreement with Defendant CallFire for the purpose of sending automated text messages," D.E. 6 at ¶ 34, but even this allegation simply describes what common carriers do – i.e., they *deliver* messages their customers send, or initiate, for a fee. Thus, Plaintiff has clearly failed to allege facts sufficient to state a TCPA claim against CallFire and the claim should be dismissed.

### 2. Plaintiff Has Not Alleged Any Facts Sufficient To Overcome CallFire's Common Carrier Immunity

Not only does Plaintiff fail to allege sufficient facts to establish that CallFire violated the plain language of the FCC's TCPA regulations, but Plaintiff fails to allege *any* facts sufficient to overcome CallFire's common-carrier immunity. As detailed in full below, Plaintiff is required to overcome CallFire's common carrier immunity at the pleading stage. Nowhere does Plaintiff allege that CallFire had either a high degree of involvement in or actual notice of the allegedly unsolicited messages its customer sent. As such, Plaintiff has not alleged facts sufficient to overcome CallFire's common carrier immunity.

### a. The FCC's Common-Carrier Immunity Standard

The FCC has exempted common carriers like CallFire from liability for their customers' messages, holding that common carriers are exempt from liability for the legality of a call unless they have a "high degree of involvement" or "actual notice" of the illegal use of their services.[15]

The FCC order exempting common carriers from liability unless they have a high degree of involvement or actual notice of illegal use of their services was an order of general applicability concerning the qualified immunity of all common carriers regulated by the FCC for any illegal use of their facilities. In it, the FCC reaffirmed the long-standing rule that "common carriers have a general obligation to hold out their services to the public on a first-come, first-

---

[15] *See In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 FCC Rcd. 2819, 2820 (1987).

served basis **without regard to content**."[16]   The FCC further held that "although telephone common carriers do not appear to enjoy *absolute* immunity from liability if their facilities are used for *an* illegal purpose, **there must be a high degree of involvement or actual notice of *an* illegal use** and failure to take steps to prevent such transmissions **before any liability is likely to attach**."[17]   The decision was issued in 1987, four years before the TCPA was enacted, in the FCC's *General* Docket, [18] and has not been limited since.  In fact, the FCC has only *expanded* this standard, granting immunity under the TCPA to fax broadcasters as well.[19]  Thus, this conferral of common-carrier immunity is the general standard that must be met – and pleaded – before a common carrier can be liable for *any* use of its services.

### b. Plaintiff Must Overcome CallFire's Common-Carrier Immunity At The Pleading Stage

As discussed above, under the Hobbs Act, 28 U.S.C. § 2342(1), district courts are bound by the FCC's rulings including the requirement that a plaintiff must overcome CallFire's common carrier immunity at the pleading stage.[20]  This is not a heightened pleading standard as Plaintiff may argue.  *Every* complaint must state a plausible right to relief by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The FCC has ruled that before liability can attach to a common carrier, it must be shown that the common carrier has a

---

[16]      *Id.* ¶ 5 (emphasis added).

[17]      *Id.* ¶ 10 (emphasis added).

[18]      *Id.* ¶ 1.

[19]      Extending common carrier immunity to fax broadcasters, the FCC stated, "[i]n the absence of 'a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions,'" "carriers who simply provide transmission facilities that are used to transmit others' unsolicited facsimile advertisements may not be held liable."  *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8779-80 (1992) (quoting 2 FCC Rcd. at 2820).

[20]      *See*, *e.g.*, *Olney*, 2014 WL 1747674, at *4 ("The FCC's interpretations of the TCPA are controlling unless invalidated by a court of appeals."); *see also Missud v. Nevada*, 861 F. Supp. 2d 1044, 1052 (N.D. Cal. 2012) (holding that plaintiff failed to allege sufficient facts in his complaint to overcome defendants' qualified immunity); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (affirming district court's dismissal of complaint in the context of Rule 12(b)(6) motion on the basis of immunity, and rejecting argument that district court had impermissibly relied on extrinsic material).

"high degree of involvement" or "actual notice" of the illegal use of their services.  The only way a plaintiff can state a plausible claim for relief against a common carrier is thus by pleading factual content demonstrating that the common carrier had a "high degree of involvement" or "actual notice" of the illegal use of their services.

Plaintiff has not made these allegations.  Indeed, Plaintiff only alleges (1) that *Diamond* "orchestrated the transmission" of the two text messages, D.E. 6 at ¶ 9, (2) that CallFire "facilitated the delivery of" text messages, D.E. 6 at ¶ 24, and (3) that "Defendant Diamond entered into an agreement with Defendant CallFire for the purpose of sending automated text messages." D.E. 6 at ¶ 34.  The essence of a common carrier is providing its customers with connectivity to the public switched telephone network so that customers may send their own messages to those with whom they wish to communicate.  This is exactly the role Plaintiff ascribes to CallFire, *i.e.*, it assists with the *delivery* of its customers' messages after they have initiated the messages. Nowhere does Plaintiff allege that CallFire controlled the content, timing or recipients of the messages allegedly received by Plaintiff or that CallFire even knew of its customer's alleged illegal activity.[21]

In sum, as CallFire has shown, (1) CallFire is a common carrier that simply provides its customers web-based common carrier services that enable its customers to control the content, timing, and recipients of the messages they choose to send themselves and (2) Plaintiff's FAC fails to allege that CallFire had notice of or a high degree of involvement in the alleged illegal use of its services by its customer in this case. Dispositively, the FCC, the agency tasked with both regulating common carriers and implementing the TCPA, has made a binding decision that

---

[21]    Courts have held that TCPA class actions cannot be maintained against a communications service provider unless the plaintiff alleges that the provider was the *originator* or *controller* of the content of the messages its customer was alleged to have sent through its service, or otherwise had a high degree of involvement in or actual notice of the unlawful activity and failed to take steps to prevent the text transmissions.  *See Mendez v. C-Two Group, Inc.*, CIV No. 13-5914-EMC, Order Granting Defendant MobileStorm Inc.'s Motion to Dismiss (ECF No. 23) (N.D. Cal. April 21, 2014) (dismissing non-common carrier communications software platform provider from a putative TCPA class action because the plaintiff failed to plausibly allege the defendant had a high degree of involvement in messages initiated by the defendant's customer or actual notice of the alleged unlawful activity); *see also Clark v. Avatar Techs. PHL, Inc.*, CIV No. H-13-2777, 2014 WL 309079, at *3 (S.D. Tex. Jan. 28, 2014) (dismissing TCPA claim with prejudice against VoIP provider accused of transmitting its co-defendant's messages because "Congress did not intend to allow secondary [TCPA] liability on telecommunications carriers based on an allegation of conspiracy" to transmit messages).

common carriers are entitled to immunity under the facts alleged. The claims against CallFire should be dismissed with prejudice.

### 3. Plaintiff Has Not Plausibly Alleged That CallFire Used An ATDS

Plaintiff has also failed to plead facts sufficient to allege that CallFire used an automatic telephone dialing system ("ATDS"). The TCPA defines an ATDS as "equipment which has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Although the Eleventh Circuit has not directly discussed the meaning of this definition, the Ninth Circuit has held that the definition of an ATDS is "clear and unambiguous" and therefore the Court's analysis "begins" and "ends" with the statutory text. *Satterfield v. Simon & Schuster*, *Inc*., 569 F.3d 946, 951, 953 (9th Cir. 2009).

Following *Satterfield*, courts have defined "capacity" in the context of an ATDS as "the system's **present,** not **potential,** capacity to store, produce, or call randomly or sequentially generated telephone numbers." *Gragg v. Orange Cab Co,. Inc.,* 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014) (emphasis in original). Further, "'random or sequential number generator' refers to the *genesis* of the list of numbers" and "cannot reasonably refer broadly to any list of [telephone] numbers dialed in random or sequential order[.]" *Marks v. Crunch San Diego, LLC*, No. 14-CV-00348-BAS-BLM, 2014 WL 5422976, at *3 (S.D. Cal. Oct. 23, 2014) (emphasis added).[22] As such, the term ATDS cannot be construed to apply to any system simply because it can be set up to send texts from a stored list of cell phone numbers.[23] In addition, in order to even

---

[22]      *See also Gragg*, 995 F.Supp.2d at 1193; *Dominguez v. Yahoo!, Inc.*, No. CIV. 13-1887, 2014 WL 1096051, at *4-5, n.6 (E.D. Pa. Mar. 20, 2014) (relying on *Satterfield* in granting Yahoo summary judgment and stating that the statutory requirements of an ATDS "require more than simply that the system store telephone numbers and send messages to those numbers without human intervention").

[23]      The FCC has commented that an ATDS is "any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991* 27 FCC Rcd. 15391, 15392 n. 5 (2012) (emphasis in original). However, *Satterfield* instructs that because the statutory definition of ATDS is "clear and unambiguous," deference to FCC guidance under *Chevron v. Natural Res. Def. Council, Inc*., 467 U.S. 837 (1984), would be inappropriate. *See Satterfield*, 569 F.3d at 951, 953 (stating that "'[the court's] inquiry begins with the statutory text, and ends there as well if the text is unambiguous'" and where "Congress spoke clearly, we need not look to the FCC's interpretations").

qualify as an ATDS, the system also must operate without human intervention.  *See Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015) (finding that administrative text messages sent to plaintiff by a group text messaging application were not sent without human intervention where the text messages were sent by the application in direct response to a group member adding plaintiff's phone number to the group).

Given the above, Plaintiff's FAC does not contain facts sufficient to infer that CallFire or Diamond used an ATDS to transmit the text messages at issue.  Plaintiff alleges that CallFire "facilitated the delivery of text messages through the use of equipment which meets the definition of" an ATDS, and that "[m]ass text messaging from short codes can only be achieved via an automatic telephone dialing system."  However, read in full, the allegations in the FAC can only support the inference that an ATDS was *not* used in this case.  As an initial matter, Plaintiff only alleges receiving two separate text messages, five days apart, from his former attorney.  D.E. 6 at ¶¶ 30, 31.  Indeed, Plaintiff alleges that he had once been a client of Diamond and that Diamond determines to whom to send messages by cross-referencing lists of people who have traffic infractions against a list of its former clients. D.E. 6 at ¶¶ 28, 33. Taking Plaintiff's allegations as true, his telephone number was not stored or produced by "using a random or sequential number generator," 47 U.S.C. § 227(a)(1); instead, Diamond selected it because Diamond knew it belonged to Plaintiff.  Further, the alleged text messages were delivered as a direct result of Diamond's actions, D.E. 6 at ¶ 33, and were therefore the result of human intervention.  There is thus nothing in Plaintiff's allegations that can plausibly suggest that an ATDS was used to send him the two discrete text messages at issue that Diamond sent to Plaintiff only after Diamond became aware of Plaintiff's subsequent traffic ticket.  Because initiating a text message is only actionable under the TCPA if it is sent via an ATDS, Plaintiff's claim should be dismissed on this ground alone.

## CONCLUSION

For the foregoing reasons, CallFire respectfully requests that the Court dismiss Plaintiff's First Amended Class Action Complaint with prejudice as to CallFire for lack of personal jurisdiction and for failure to state a claim.

Dated: February 11, 2015

_s/ Morgan Swing_____
Charles M. Rosenberg
Fla. Bar No. 279064
Morgan L. Swing
Fla. Bar No. 17092
*Attorneys for CallFire, Inc.*
CARLTON FIELDS, P.A.
Miami Tower
100 S.E. Second Street, Suite 4200
Miami, FL 33131
Tel: (305) 530-0050
Fax: (305) 530-0055
E-Mail: crosenberg@carltonfields.com
E-mail: mswing@carltonfields.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that that a true and correct copy of the foregoing document was filed with the United States District Court for the Southern District of Florida and was served by using CM/ECF, on February 11, 2015, on all counsel or parties of record on the service list below.



_____/s/ Morgan L. Swing_____
Attorney

## SERVICE LIST

*John Salcedo v. The Law Offices of Jason A. Diamond, P.A., et al.*
Case No. 0:14-cv-62961-Dimitrouleas-Snow
United States District Court, Southern District of Florida

Scott D. Owens
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Suite 235
Hollywood, Florida 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
Email: scott@scottdowens.com

Steven R. Jaffe
Seth M. Lehrman
Mark S. Fistos
FARMER, JAFFE, WEISSING, EDWARDS
FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822
Email: steve@pathtojustice.com
Email: seth@pathtojustice.com
Email: mark@pathtojustice.com